## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

In Re                                    )
                                         )
Rich International Airways, Inc          )    Case No: 96-17399
                                         )
          Debtors                        )    **Chapter XI**
                                         )
_____)

## MOTION FOR RELEASE OF UNCLAIMED FUNDS

COMES NOW, ERIC DANGERFIELD D/BA OMEGA CONSULTING, in the capacity as Assignee of RICH INTERNATIONAL AIRWAYS INC, and shareholder and interested person, STEPHEN MEENAN F/K/A STEPHEN RICH, in the above-numbered cause, and under penalty of perjury under the laws of the United States of America declare (or certify, verify, or state) that the following statements and information are true and correct.

1.    Applicant requests an order releasing the forfeited funds in this cause, which are reasonably believed to be in the amount totaling $430,122.63, plus or minus ten percent, or such other amount that that is determined to be held in the court's registry.

2.    Applicant is the Assignee of the debtor, RICH INTERNATIONAL AIRWAYS INC, by and through an assignment and power of attorney executed by one of its last known executives, Stepehn Meenan F/K/A Stephen Rich, in his capacity as such and also as a former shareholder of said corporation.

## RIGHTS TO RECOVER UNCLAIMED FUNDS

3.    This case was a voluntary proceeding under Chapter 11 of the United States Bankruptcy Code filed by the debtor(s) on November 18, 1996.

4.    The Second Amended Joint Plan of Liquidation was confirmed on April 27, 1998.

5.    The Final Decree closing the Chapter 11 cases of the above-named debtors was entered on October 30, 2008 with the estates of the debtors having been fully administered.

6.       At present, there remains the approximate sum of $430,122.63, plus or minus ten percent, held on deposit with the registry of the court representing distribution funds unclaimed by creditors of the debtors.

7.       11 USC Section 347(b) provides:

> Any security, money, or property remaining unclaimed at the expiration of the time allowed in a case under chapter 9, 11, or 12 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943(b), 1129, 1173, or 1225 of this title, as the case may be, becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be.

8.       11 U.S.C. Section 1143 provides:

> If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken later than five years after the date of the entry of the order of confirmation.  An entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

9.       More than five years have elapsed since the order confirming the debtors' Plan entered in this case.  The funds remaining unclaimed on deposit with the Court in the approximate amount of $430,122.63, plus or minus ten percent, therefore become the property of the debtors pursuant to 11 U.S.C. § 347(b) and 1143 of the U.S. Bankruptcy Code.  "Together, these provisions denote an unmistakable point at which unclaimed funds automatically become the property of the debtor".  See 3 Collier, supra. P. 347.03, at 347-6:  Se also, *Goldblatt*, 132 B.R. at 738 ("**the statute provides a clear bright-line rule that unclaimed funds are automatically to be returned to the debtor**").  "To the extent they require creditors to act upon their rights or risk losing their claims, Section 347 and 1143 function akin to statutes of limitations designed to provide repose after passage of a reasonable  time for action." 3 Collier, supra. P. 347-01:  See also, 8 Collier, supra, P 1143.01:  See also, *In re: George Rodman, Inc*, 50 B.R. 313, 314 (Bankr. W.D. Okla. 1985) (holding that Sections 347(b) and 1143 "set in place a means for dealing with unclaimed property which does not

allow for any alternate scheme."); *In re Georgian Villa, Inc*, 55 F.3d 1561 (11th Cir. 1995); *In re: TLI, Inc*, 213 B.R. 946 (N.D. Tex. 1997), aff'd 159 F.3d 1355 (5th Cir. 1998).

10.    The unclaimed funds on deposit with the Court therefore have become the property of the debtors pursuant to 11 U.S.C., Sections 347(b) and 1143, which retain a five-year deadline for creditors to perform any act required for participation in a distribution, after which time, should creditors fail to comply therewith, the unclaimed property automatically becomes property of the debtor(s).

### The Second Amended Plan Does Not Control Distribution of Unclaimed Funds:

11.    Once unclaimed funds are deposited into the court registry, the Bankruptcy Code controls the disposition of said funds. *TLI*, 213 B.R. at 951 (holding that unclaimed funds deposited in the court registry no longer retained their character as claims fund assets).

12.    Here, even if Debtor's Plan controlled the disposition of unclaimed funds deposited with the court registry, the Plan provides no guidance and is silent as to said disposition. While *Debtors' Second Amended Joint Plan of Liquidation, Article L, Section 6.33, P. 45-46* provides that unclaimed distributions shall be deposited into the court registry after 90 days, the follow up provisions of *Article L, Section 6.34, P. 46 explicitly provides that* "**Any funds unclaimed for the period described in paragraph 6.33 of the Plan shall be forfeited by the holder otherwise entitled thereto**, and all rights, title and interest therein shall thereupon vest as described in paragraph 6.33 of the Plan." The Plan does not dispose of the issue regarding the disposition of these funds. The bankruptcy code controls that disposition.

13.    The unclaimed funds on deposit with the court have therefore, by operation of law, become the property of the Debtor pursuant to *11 U.S.C., §§ 347(b) and 1143*, which retain a five-year deadline for creditors to perform any act required for participation in a distribution [after which time, should creditors fail to comply therewith, the unclaimed property automatically revests in the Debtor].

14.   The bankruptcy jurisprudence in Florida is well-established with regard to the handling of residual assets in Chapter 11 bankruptcy cases. Absent wrongdoing of the corporate debtor, such assets are paid over to such entity or to the entity acquiring all or substantially of its assets, or successor in interest. See the March 28, 2000 order in this district granting release of unclaimed funds in *Kennedy & Cohen Inc*, (Cause No. 76-97 BKC NCR-B), and the December 27, 2001 order in this district granting release of unclaimed funds in *In The Matter of First Baptist Church Inc of Margate, Florida*, et al (Cause No. 73-415-BK-CF-H), and the February 14, 2005 order in the Middle District granting release of unclaimed funds in *In re: Lido Beach Inn Condo Hotel Association, Inc.*, (Cause No. 8:95-BK-07562-ALP), and the February 7, 2006 order in the Middle District granting release of unclaimed funds in *In Re International Administrative Services, Inc.* (Cause No. 96-03950-6J1).

15.   Bankruptcy courts from other jurisdictions have also customarily and regularly paid over unclaimed dividends in Chapter 11 cases to the debtor, entity acquiring all or substantially of its assets, or successor in interest.

A.   In *TLI*, 213 B.R. at 956, the court held that *§§ 347(b)* and *1143* are "triggered" when creditors receive their checks from the bankruptcy estate and "fail to cash them within an appropriate time." There, as here, the plan of reorganization did not provide for disposition of unclaimed funds deposited into the court registry, and instead stated that unclaimed funds remaining after a specified period would return to claims fund for distribution to other creditors. *Id.* at 948-49. However, the unclaimed funds were instead transferred to the court registry. *Id.* at 951. The court held that those funds were "no longer part" of the claims fund to be distributed under the plan, and the Bankruptcy Code then governed their disposition. *Id.* at 951.

B.   In *In re IBIS*, 272 B.R. 883, 890 (Bankr. E.D. Va. 2001), the court held that unclaimed funds were to revert back to the debtor, and would not be distributed pro-rata to remaining creditors. Like here, the plan of reorganization there contained no specific

direction for unclaimed funds contained in the court registry. *Id.* at 887. Instead, the plan specifically stated creditors were to receive pro-rata distributions; however, such instruction did not affect unclaimed funds because any deviation from the "preferred statutory scheme" (*Bankruptcy Code §§ 347(b)* and *1143*) "must be clear." *Id.* at 897. Further, the court held that funds are unclaimed when the disbursing agent has (1) performed every required act to distribute claim funds, (2) given reasonable notice of fund availability to the intended recipient, and (3) the intended recipient has indicated a lack of interest in the funds or has abandoned a right to the funds by doing "nothing for a period of time." *Id.* at 890. There, the court noted that the outstanding checks which were mailed and delivered but not returned or cashed by creditors, and checks returned as undeliverable after the trustee's reasonable search and notice, constituted unclaimed funds which belonged to the debtor. *Id.* at 894-95.

**Debtor Continued Its Corporate Existence after Commencement of the Plan:**

16.    <u>Florida Private Corporation Law:</u>   Rich International Airways Inc continues to exist "as a body corporate for the purpose of prosecuting...suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually" to liquidate and wind up its affairs. *Fla. Stat. Ann. §§ 607.1405(1)(a), (e)* (LexisNexis 2009). Debtor may also commence a proceeding in its corporate name, despite being dissolved. *Id. at §607.1405(e)*; *Kagen v. Bercu, (In re Bercu,* 293 B.R. 806, 810 (Bankr. M.D. Fla. 2003) (*citing Nat'l Judgment Recovery Agency, Inc. v. Harris,* 826 So. 2d 1034, 1035 (Fla. Dist. Ct. App. 2002) *reh'g denied,* 845 So. 2d 890 (Fla. 2003)); *Cygnet Homes, Inc. v. Kaleny Ltd. of Florida,* 681 So. 2d 826 (Fla. Dist. Ct. App. 1996). A "proceeding" includes civil suits and administrative actions. *Fla. Stat. Ann. § 607.01401(21).* As such, Debtor is legally capable of seeking the unclaimed funds deposited in this court's registry. During the liquidation and winding up process, the directors of the corporation become trustees and retain full authority to settle its affairs. *Id. at §78.580.* Therefore, Debtor is legally capable of pursuing its claim under *§§ 347(b)* and *1143*, and the assignment by its former executive, Stephen Meenan F/K/A

Stephen Rich, to Jacob Consulting for purposes of pursuing unclaimed funds in the court registry is proper.

17.    Further, Florida bankruptcy courts have allowed former shareholder's to maintain an action on behalf of a dissolved corporation to recover the remaining assets. See *Williams v. Brown (In re Air Safety Int'l, L.C.)*, Case No.: 03-80236-CIV-Cohn , United States District Court For The Southern District of Florida, 308 B.R. 90 (United States Southern District of Florida 2003.)

**Florida Trust Law:**

18.    Since the "Liquidating Trust" has terminated, due to the expiration of time, resort to that Trust's language is unsatisfactory (i.e.it leads to no resolution). *Debtors' Second Plan, Article 5, Section 5.3, P. 11*.  While not controlling, an examination of Florida trust law by analogy also supports return of the unclaimed funds to Debtor. The Florida Trust Code states that "a trust terminates to the extent the trust expires." *Fla. Stat. Ann. § 736.0410* (LexisNexis 2009).  Further, when resort to language contained in the trust's provisions is too indefinite for enforcement, the trust is void, and the trustee then holds the trust corpus in a "resulting trust" in favor of the grantor's estate. *McLemore v. McLemore*, 675 So. 2d 202, 205 (Fla. Dist. Ct. App. 1996).  Here the grantor is Debtor.

**Reopening the Bankruptcy Estate Would Be Unduly Burdensome:**

19.    The unclaimed funds totaling $430,122.63 are of such a miniscule amount in comparison with the total aggregate of the claims filed in this bankruptcy case that it would be unduly burdensome and impractical to reopen the bankruptcy estate in an effort to again engage in administering these asset.  In *TLI*, 213 B.R. at 949, the court held that "recycling" $108,311.50 from the court registry back to creditors for payment of $27 million in allowed unsecured claims was "impractical."  There, the court noted the relatively nominal dividend would be "burdensomely small."  *Id.*  The unclaimed funds in the instant matter, which are less than those involved in *TLI*, should revert to Debtor. *Id*

20.   Applicant has made sufficient inquiry and has no knowledge that this claim has been previously paid that any other application by the debtors based on the revesting provisions of 347(b) and 1143 is currently pending before this Court.

21.   Further bankruptcy jurisprudence indicates that a plan may not be revisited for modification and/or changes after it has been substantially consummated.   The plan in this bankruptcy proceeding has been substantially modified.   More than 5 years have passed, and pursuant to the application and accompanying documents and exhibits, the remaining sums totaling $430,122.63, plus or minus ten percent, should be paid over to Applicant without further delay.

22.   Applicant submits with this application and motion the following document(s) as proof of the applicant's identity and status, and owner's claim of entitlement:

   (1)   General Assignment & Declaration executed by Stephen Meenan F/K/A Stephen Rich, by and through its former Director, Stephen Meenan F/K/A Stephen Rich, which unequivocally transfers the debtor's remaining rights, privileges, and interests to Omega Consulting.

   (2)   LF-28 (rev. 07/17/07) – Affidavit of Claimant; attached hereto as Exhibit B;

   (3)   Copy of assumed name certificate for Omega Consulting; attached hereto as Exhibit C.

   (4)   Copy of photo identification for Eric Dangerfield, the owner of Omega Consulting; attached hereto as Exhibit D.

23.  I understand that, pursuant to 18 U.S.C. § 152, I may be fined or imprisoned, or both, if I have knowingly and fraudulently made any false statements in this document.

WHEREFORE, applicant, Eric Dangerfield d/b/a Omega Consulting, as Assignee of Rich International Airways, Inc and as assignee of former shareholder, Stephen Meenan F/K/A Stephen Rich, submits to the personal jurisdiction of this Court, and respectfully requests the enter an order:

   A.  Directing the Clerk of the Court to surrender and pay over unto Debtors all funds remaining unclaimed and on deposit in the Court registry in this cause in the amount of $430,122.63, or such other amount which may be found remaining in the court's registry in this cause.; and

B. Order such other and further relief as the case may require for purpose of judicial economy, equity, and finality as intended by Congress as appearing in Title 11, Sections 347(b) and 1143.

### DECLARATION UNDER 28 U.S.C. § 1746

"I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct

Omega CONSULTING, as Assignee of Rich International Airways Inc and former shareholder, Stephen Meenan F/K/A Stephen Rich.

Dated: 5 -21- , 2010

By: _____

Eric Dangerfield, as Owner and Agent of Omega Consulting, the Assignee of
7706 Pinebrook Dr
San Antonio, Tx 78230
210-834-2109 (tel)
206-888-4687 (fax)
omega77x7@yahoo.com

# EXHIBITS

## General Assignment & Declaration

1. **RICH INTERNATIONAL AIRWAYS, INC** (Tax ID: 59-1312091), and **STEPHEN J. RICH F/K/A STEPHEN J. MEENAN**, in his capacity as one of the company's last Directors and Major Shareholders, and which parties are jointly and individually referred to as ("Assignors"), acknowledge and declare that Assignors understand that **OMEGA CONSULTING** (7706 Pinebrook Dr; San Antonio, TX 78230), has utilized its resources and professional expertise to identify certain dormant claims, residual cash assets, or intangible proerty (the "Assets") which appear to be recoverable by Rich International Airways, Inc, and

2. **For valuable consideration or the promise of valuable consideration totaling** [ Private ] amount that is equal to 60% of the net recovered assets, Assignors do hereby assign to Omega Consulting, the rights, privileges, and interests, if any, pertaining to recovery of such Assets; and to the extent necessary in recovering such Assets, then Assignors also grant Omega a Power of Attorney to do all things reasonable and necessary for the purpose of recovering the Assets, including without limitation, the authority and power to present appropriate documentation to show its entitlement thereto.

3. **THIS INSTRUMENT** is "AS IS" and Omega shall not incur any expense or obligation on Assignors' expense, and Assignor waives its rights to receiver notice and opportunity to appear to otherwise participate in any post-transfer assignment endeavor, application, hearing, suit, or other process initiated by Omega; However, Omega shall exercise its good faith and discretion in keeping Assignors apprised of all major developments, including but not limited to all filings, requests, demands, offers, rulings, etc with respect to such recovery of such Assets by Omega.

4. **OMEGA** shall prosecute this matter in its own name, pursuant to its sole discretion and Omega's rights, powers and authority shall commence and bee in full force an effect from the date hereunder for a period of 180 days.

5. It is understood that should Omega fail to tender payment to Assignor prior to the expiration of 180 days from the date hereunder, then said Assignors' damages shall be limited to 60% of the net assets, if any, recovered by Omega; provided, however, that if Omega has not received any monies based upon the interests assigned herein, then Company's damages shall be limited to $1.

<div style="border:1px solid">acceptance by Omega Consulting on 3-24-2010</div>

**TERMINATION: It is understood that this Assignment shall automatically terminate 180 days after the date of signature hereunder; provided, however, that Assignee shall continue to be empowered to complete any pending request, application, and/or other process that has begun prior to the expiration of that time period for the purpose of recovering the assets hereunder.**

**WHEREFORE,** I set my hand as follows and declare that as a member of the Board of Directors, I managed, supervised, and otherwise directed the Rich International Airways, Inc's affairs as one of its Directors, and pursuant to my authority thereto and as a Major Shareholder and pursuant to my beneficial and/or residual ownership rights, if any, this instrument is executed.

SIGNED: *Stephen Rich*

~~ATTORNEY SCOTT SCHOMBER, not individually but as Attorney for~~
Stephen J. Rich f/k/a Stephen J. Rich, individually as one of the Major Shareholders and in his capacity
as one of the last known Directors of RICH INTERNATIONAL AIRWAYS INC
19501 Biscayne Blvd Ste 400
Aventura, Florida 33180

### NOTARY ACKNOWLEDGMENT

SUBSCRIBED and sworn to before me by ~~SCOTT SCHOMBER~~, on the date below, to certify which I set my hand and seal of office.

Date: October ___ [notary seal: SCOTT R. SCHOMBER / MY COMMISSION # DD 690517 / EXPIRES: August 30, 2011 / Bonded Thru Notary Public Underwriters] Notary Public

<div style="border:1px solid">Modification accepted by Attorney Scott Schomber on the date noted</div>

<div style="border:1px solid">Omega Consulting, Accepted as modified with the 180 days beginning on March 24, 2010</div>

amount of the Claim upon which such Distribution was made shall be deposited into the Registry of the Bankruptcy Court.

6.34 A distribution of funds is unclaimed, if, without limitation, the holder of a Claim entitled thereto does not cash a check or returns a check or if the check mailed to the holder at the address set forth in the Debtor's Schedules or set forth in a proof of Claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

6.35 Any funds unclaimed for the period described in paragraph 6.33 of the Plan shall be forfeited by the holder otherwise entitled thereto, and all rights, title and interest therein shall thereupon vest as described in paragraph 6.33 of the Plan.

M.   Miscellaneous Provisions Regarding Distributions Under the Plan.

6.36 Except as otherwise expressly provided in the Plan, the Liquidating Trustee may, with the prior approval of the Bankruptcy Court, setoff against any Claim and the payments made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor or the Liquidating Trustee may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee of any Claim that the Debtor or the Liquidating Trustee may have against the holder of such Claim.

6.37 Unless the holder of a Claim advises, as appropriate in time, the Debtor or the Liquidating Trustee or their attorneys





NO.________

NAME OF BUSINESS

OMEGA CONSULTING

7706 Pinebrook #100

San Antonio, TX 78230

CERTIFICATE OF
ASSUMED NAME

FILED IN THE OFFICE OF THE BEXAR COUNTY CLERK THIS______DAY OF______A.D. 2__ AT______O'CLOCK______M.

GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:__________
DEPUTY

Doc# 20048321A93

Doc# 20048321A93

Doc# 20048321A93

Fees $11.00

Doc# 20048321A93

# ASSUMED NAME CERTIFICATE

FOR AN UNINCORPORATED BUSINESS OR PROFESSION OTHER THAN A
LIMITED PARTNERSHIP, REGISTERED LIMITED LIABILITY PARTNERSHIP, OR LIMITED LIABILITY COMPANY

PURSUANT TO THE PROVISIONS OF CHAPTER 36, TITLE 4, BUSINESS AND COMMERCE CODE OF THE STATE OF TEXAS, THE UNDERSIGNED CERTIFIES THE FOLLOWING:

1. THE ASSUMED NAME AND ITS BUSINESS ADDRESS UNDER WHICH THE BUSINESS IS NOW OR IS TO BE CONDUCTED IS:

| ASSUMED NAME | BUSINESS ADDRESS |
|---|---|
| OMEGA CONSULTING | |

**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH 45999-0023

Date of this notice: 12-14-2006

Employer Identification Number:
20-5961093

005065.346929.0016.001 2 MB 0.563 1010

Form: SS-4

Number of this notice: CP 575 A

OMEGA CONSULTING
7706 PINEBROOK DR STE C
SAN ANTONIO TX 78230

For assistance you may call us at
1-800-829-4933

005065

IF YOU WRITE, ATTACH THE
STUB OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN). We assigned you EIN 20-5961093. This EIN will identify your business account, tax returns, and documents, even if you have no employees. Please keep this notice in your permanent records.

When filing tax documents, please use the label we provided. If this isn't possible, it is very important that you use your EIN and complete name and address exactly as shown above on all federal tax forms, payments and related correspondence. Any variation may cause a delay in processing, result in incorrect information in your account or even cause you to be assigned more than one EIN. If the information isn't correct as shown above, please correct it using tear off stub from this notice and return it to us so we can correct your account.

Based on the information from you or your representative, you must file the following form(s) by the date(s) shown.

| | |
|---|---|
| Form 941 | 01/31/2008 |
| Form 1120 | 08/15/2007 |
| Form 940 | 01/31/2008 |

If you have questions about the form(s) or the due date(s) shown, you can call or write to us at the phone number or address at the top of the first page of this letter. If you need help in determining what your tax year is, see Publication 538, Accounting Periods and Methods, available at your local IRS office or you can download this Publication from our Web site at www.irs.gov.

If you believe your yearly employment taxes will be $1,000 or less for the tax year (average annual wages of $4,000 or less), please contact us on 1-800-829-0115. You will be required to file Form 944, Employer's Annual Federal Tax Return, rather than Form 941, Employer's Quarterly Federal Tax Return. This return will be due annually, on January 31, following the end of the tax year. You can pay your tax liability annually when you file your return, or you may choose to make more frequent deposits to reduce the balance due with your annual return. If you use a Reporting Agent or Tax Practitioner, inform him or her of your Form 944 filing requirement. If your annual liability rises to $2,500 or more, you will be required to make deposits. If you do not make the required deposits, you may be subject to penalties and/or interest. Please refer to Publication 15 (Circular E), Employer's Tax Guide, for deposit requirements and for more details on the Form 944 annual filing program.

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

In Re                                  ) **Case No: 96-17399**
                                       )
Rich International Airways Inc          ) **CH 11**
       Debtor                          )
                                       )
                                       )
_____ )

## CERTIFICATE OF SERVICE

I certify under penalty of perjury under the law of the United States that on the 27th day of

May 2010, that a copy of this Application To Withdraw Unclaimed Funds was mailed to the United

States Trustee at 51 S.W. 1st Avenue, Room 1517; Miami, FL 33130; U.S. Attorney, 99 N.E. 4th Street,

Miami, Florida 33132 and to other interested parties herein.

Eric Dangerfield, as Owner and Agent of
Omega Consulting, the Assignee of
7706 Pinebrook Dr
San Antonio, Tx 78230
210 430-0649 (tel)
206 426-1291 (fax)
omega77x7@yahoo.com