**UNITED STATES BANKRUPTCY COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Miami Division

www.flsb.uscourts.gov

FILED RECEIVED SEP 2 0 2010

*In re:*

Rich International Airways, Inc.,

Debtor

Case No.: 96-17399-RAM

Chapter 11

**MOVANTS' POST-HEARING BRIEF ADDRESSING ISSUES RAISED BY COURT**

During the September 8 hearing herein, it was revealed that at least some distribution checks from the liquidating trusts were not issued until more than five (5) years after plan confirmation. The Court inquired what impact such a fact has on the operation of *11 U.S.C. § 1143* ("*§ 1143*). Counsel for Movants has become aware that the decision in *In re IBIS Corp.*, (272 B.R. 883 (Bankr. E.D. Va. 2001)), addresses that issue in dicta. *In re IBIS* was decided after *In re TLI, Inc.*, (213 B.R. 946 (Bankr. N.D. Tex. 1997), *aff'd* 159 F. 3d 1355 (5th Cir. 1998)). 272 B.R. at 883. As is discussed below, the *In re IBIS* court followed *In re TLI's* holding that *11 U.S.C. § 347(b)* ("*§ 347(b)*")—not the Chapter 11 plan—governs disposition of unclaimed registry funds, but interpreted *§ 1143* differently than the *In re TLI* district court. *In re IBIS*, 272 B.R. at 883.

Claimants believe the facts of Flowers and Rich present the scenario envisioned by the N.D. of Illinois Bankruptcy Court in *In re Entire Supply, Inc.*, (No. 91-13435, 2008 Bankr. LEXIS 345, at *12 (Bankr. N.D. Ohio Feb. 5, 2008)):

> "Certainly, if Entire Supply continued to exist as a corporation, and if there was no other entity acquiring the assets of the debtor under the plan, then petitioner would be correct in his assertion that the unclaimed funds must be returned to the debtor corporation pursuant to *11 U.S.C. 347(b).*"

Unlike Entire Supply, Inc., both of these corporations, even though administratively dissolved, were not stripped by their plans of their officers or directors. As shown in the Reply Brief, Nevada and Florida law allow their respective corporations to claim and receive these funds—which are their last remaining assets. Their plans certainly do not prohibit the debtors from claiming the sought-after funds, and it is inappropriate for an order of this court to deprive them from doing so. *In re TLI*, 213 B.R. at 951 (*citing 3 Collier on Bankruptcy P 347.03[2]*(Lawrence P. King, ed., 15th ed. 1996) and *In re George Rodman, Inc.*, 50 B.R. 313 (Bankr. W.D. Ok. 1985)).

Since both Flowers and Rich continue to exist as corporations, even though they did not continue to operate, and no other entity acquired their assets, *§ 347(b)* mandates that the unclaimed registry funds be returned to these debtors. The above-quoted dicta from *In re Entire Supply*, indicates the result provided by *§ 347(b)* would also be the result in the Northern District of Ohio. 2008 Bankr. LEXIS 345, at *12. That was certainly the result in *In re TLI.* 213 B.R. at 951. Just as in these cases, (1) TLI, Inc., although not dissolved, was not going to operate following disposition of its assets by the liquidating agent; (2) millions of dollars of allowed claims were never paid (*i.e.*, *In re TLI* was not a "surplus" case); and (3) substantial unclaimed funds ($108,311.50) were paid into registry. *Id.* At first, the bankruptcy court denied the

debtor's *§ 347(b)* claim for the funds, reasoning the confirmed plan prohibited the debtor from receiving any funds from the liquidating trust fund and *§ 347(b)* was not intended to re-vest unclaimed funds in any debtor except one that continued with on-going business operations. *Id.* at 949-50. **In reversing the bankruptcy court**, the district court ruled that once the funds were paid into registry, plan provisions no longer control. *Id.* at 951.

Here, since the plan cannot control, IS THERE ANY DOUBT THAT THE REASONS FOR THE PLAN'S PROHIBITIONS MERIT ANY FURTHER CONSIDERATION WHEN DETERMINING WHERE THE FUNDS ARE DISTRIBUTED FROM REGISTRY? Cannot it be accurately said that a fair interpretation of the *In re TLI* district court opinion is that once a plan is fully consummated and the case is closed (so that the plan cannot be modified) and unclaimed funds are paid by the bankruptcy trustee to registry, the bankruptcy court's paternalistic protection of creditors' rights should cease? "There is no indication in either statute [*§§ 1143* or *347(b)*] that its operation may be modified by court order." *Id.* at 954.

*§ 347(b)* does **not** say it applies to cases <u>only</u> where registry funds exist due to a surplus in a bankruptcy estate. In reversing the bankruptcy court, the *In re TLI* district court and federal Court of Appeals recognized *§ 347(b)* contains no prohibition against registry funds resulting from uncashed checks being paid to a non-operating case debtor where creditors' allowed claims were not paid in full: "Nothing in 347(b) suggests an intent to exclude such debtors from collecting unclaimed funds." *In re TLI, Inc.*, 213 B.R. at 954. There, the district court wrote:

> "When the proceeds remaining in the Claims Fund [liquidating trust] were transferred to the court registry, however, the Plan's Claim Fund provisions were no longer binding on TLI. TLI could make a claim, while adhering to the Plan, *because nothing in the Plan* [to which the creditors had agreed of their own volition] *barred it from pursuing funds transferred to the court registry. Id.* at 951. [*Emphasis* added.]

Here, nothing in the Rich or Flowers plan prohibits the debtor from claiming unclaimed registry funds. Thus, "[o]nce the Unclaimed Funds were transferred into the court registry, the Bankruptcy Code, rather than the Plan, governed the rights of claimants to the sums on deposit." *See Id.*

*28 U.S.C. § 2042* ("*§ 2042*") governs withdrawal of registry funds deposited under *28 U.S.C. § 2041* ("*§ 2041*") [At the September 8 hearing, counsel for the former Rich trustee stated the funds here have been paid into registry under 2041.] *§ 2042* requires a claimant to obtain a court order directing payment to the claimant upon proving the claimant's right to the registry funds. When a case debtor is the *§ 2042* claimant, that type of claimant typically relies on automatic operation of *§§ 347(b)* and *1143* to prove that entitlement—*i.e.*, the debtor argues *§ 1143* cuts off the *§ 2042* claiming rights of the non-claiming creditors at five years after plan confirmation, then *§ 347(b)* mandates those funds be paid to the debtor.

Again, Movants believe counsel for the former trustees stated that some distribution checks from the liquidating trusts at hand were not even issued by the trustees until more than 5 years following plan confirmation. The *In re IBIS* court, picking up where *In re TLI* stopped, noted:

"There are only two conditions precedent to the application of 347(b): (i) that the funds be unclaimed and (ii) that five years have elapsed after confirmation. If these two conditions have been met, **then the unclaimed funds belong to the debtor.** [Citations omitted.] A third condition is added by *§ 1143*[:]"

> "If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in the distribution under the plan, the action must be

taken within the five-year period. If the action is not taken within the five-year periods, the creditor or security holder is barred from participating in the distribution under the plan. *Section 1143* acts as a bar date to take certain actions. [Citations omitted.]" *In re IBIS*, 272 B.R. at 887.

Thus, an *IBIS* analysis examines two issues: "whether the funds in the registry of the court are unclaimed and whether the creditors were required to take any specific action in order to be eligible to participate in distributions under the plan. If they were required to take any action [and 5 years have elapsed since plan confirmation]...they are time-barred from doing so." *Id.*

Here, the Flowers plan contained no definition of "unclaimed funds," and no deadline for cashing creditor distribution checks before the funds embodied in those checks became unclaimed funds. The Rich plan DID contain (see Sec. 6.34) a definition of "unclaimed funds," and DID contain (see Sec. 6.33) a deadline for cashing the distribution check. BECAUSE OF THESE FACTUAL DIFFERENCES, an *IBIS* analysis performed on each case would lead to different outcomes as described below.

*In re George Rodman, Inc.*, 50 B.R. 313 (Bankr. W.D. Ok. 1985), holds that a creditor cashing a check is an act required by *§ 1143*. The *In re IBIS* court rejected that notion, finding that "cashing a distribution check" is not an act required by *§ 1143* where the plan makes no provision for such circumstances. *In re IBIS*, 272 B.R. at 888. **This finding was made after discussing the impact of *§ 1143* in liquidating Ch. 11 cases where creditor distribution checks are issued <u>after</u> 5 years have elapsed since plan confirmation—*i.e.*, at a point when it is impossible for the creditor to cash such a check *within* the 5 years required by *§ 1143* if cashing such a check were a requirement of performance of an act.** *Id.* at 887 (emphasis added).

Recognizing that distribution checks are not always issued within 5 years of plan confirmation of Ch. 11 plans, the *In re IBIS* court did not have to decide whether the five-year deadline can be reduced or extended in a chapter 11 plan, **but acknowledged that (1) the plan in *In re TLI* reduced the deadline, (2) another bankruptcy court [*In re Goldblatt Bros.*, 132 B.R. 736, 739 (Bankr. N.D. Ill. 1997)] had assumed without deciding that a confirmed plan could override express requirements of 347(b), and (3) the *In re Rodman* (50 B.R. at 314) court acknowledged that a confirmed plan can reduce the 5-year deadline.** *In re IBIS*, 272 B.R. at 887 n.5.

Since the plan in Flowers fails to define "unclaimed funds" and has no check-cashing deadline, an *IBIS* analysis would conclude that in Flowers, there is no third condition of performance of an *§ 1143* act within 5 years of plan confirmation, but the second condition is clearly met (because 5 years have clearly passed since plan confirmation). A determination would then need to be made as to whether the Flowers registry funds are "unclaimed." If they are unclaimed, the *In re IBIS* decision follows *In re TLI* and holds that *§ 347(b)* automatically mandates the unclaimed registry funds be paid to the debtor making a *§ 2042* claim that relies on *§ 342(b)*. *In re IBIS*, 272 B.R. at 887.

Rich has a different aspect—*e.g.*, the Rich plan contains a definition of "unclaimed funds" (to which creditors agreed to be bound) that reduces the 5-year deadline of *§ 1143* down to 90 days. If the *In re IBIS* court followed *In re Rodman* (50 B.R. at 314) and recognized the validity of a plan provision that shortens the 5-years of *§ 1143*, an *IBIS* analysis in Rich would also conclude that only 2 conditions precedent are present, and both have been fulfilled: (1) 90 days have elapsed since issuance of the checks and by the plan's definition, the funds paid into

registry are "unclaimed funds; and (2) 5 years have clearly passed since plan confirmation. *See In Re IBIS*, 272 B.R. at 887.

Even if this court were to reject the above cited precedent and rule that it is wrong to allow a confirmed plan to deviate the 5-year requirement of *§ 1143*, *In re IBIS* teaches that since 5 years have elapsed since plan confirmation, that condition of *§ 1143* is met—leaving only a determination of whether the checks not cashed within 90 days of issuance equates to "unclaimed." *See Id.* Here, it is impossible to argue such funds are not "unclaimed" after the Rich plan has been fully consummated and the plan definition agreed upon by the creditors—a definition relied upon by the former trustee when he paid the funds of the non-timely cashed checks into registry. Indeed, this Court approved such payment into registry precisely because the former trustee deemed them "unclaimed" pursuant to the plan definition of that term. Would not the doctrines of *res judicata* and law of the case foreclose any argument now that those funds were not "unclaimed"?

So it is submitted that all of the Rich registry funds (put there via *§ 2041*) are now properly claimable by Omega Consulting under *§ 2042* because *§ 1143* has ended the rights of all Rich creditors to claim same and the *§ 347(b)* mandate provides Omega Consulting, as assignee of Rich, with the "full proof of right thereto" required by *§ 2042* in order to claim said registry funds.

As for the registry funds in Flowers, there is no debate that the 5 years has run since plan confirmation, so the *IBIS* analysis regarding the application of *§ 1143* next requires a determination of whether all, some or none of those registry funds are "unclaimed." Since no definition of "unclaimed" appears in the Flowers plan and since creditor distribution checks were

issued more than 5 years after plan confirmation, the definition of "unclaimed" set forth in *In re IBIS* would be measured against each uncashed check issued by the former trustee. 272 B.R. at 890. Here, this should be capable of accomplishment upon an examination of the former trustees' records dealing with his payments into registry. Checks which were never returned but remain uncashed to this day are clearly "unclaimed." *See Id.*

Checks that were returned in the mail do not necessarily satisfy the requirements for unclaimed funds under *§ 1143*. *In re IBIS*, 272 B.R. at 890. However, the test for "unclaimed" status of returned checks announced in *In re IBIS* is:

> "If after a reasonable search, reasonable notice, and the passage of a reasonable period of time within which it would be expected that an interested creditor would seek out the disbursing agent, the creditor cannot be found or does not appear, **IT MAY BE ASSUMED THAT THE FUNDS ARE UNCLAIMED.**" *Id.* at 891. [**EMPHASIS** added.]

At the September 8 hearing herein, counsel for the former Flowers trustee represented how the former trustee was very diligent in the performance of his duties and related some of the measures utilized to give the best available chance of success to his efforts to get those distributions into the hands of the payee/creditors. No one refuted that diligence. The last deposit of Flowers funds into registry was years ago, and no one presented any evidence of *§ 2042* claims being made in the recent past. Clearly, the only evidence before this court is that, even under the *In re IBIS* definition of unclaimed funds, all the Flowers registry funds are in fact "unclaimed"—*i.e.*, the Flowers trustee made reasonable searches for the missing creditors and gave notice sufficient under the circumstances. *See Id.* at 895. Thus, just as in Rich, all of the Flowers registry funds are unclaimed (put there via *§ 2041*) and are now properly claimable by Jacob Consulting under *§ 2042* because *§ 1143* has ended the rights of all creditors to claim

same, and the *§ 347(b)* mandate provides Jacob Consulting, as assignee of Rich, with the "full proof of right thereto" required by *§ 2042* in order to claim those funds.

**Effect of 2042 on 1143**

Movants believe counsel for the former trustee in Rich stated at the September 8 hearing that the unclaimed funds were paid into registry under the respective names of the non-claiming Rich creditors, but not all of such payments have been in this court's registry for 5 years. Her brief indicates seven such deposits were made between January 5, 2006 and October 7, 2008. At the September 8 hearing herein, the court inquired of Movants' counsel regarding the significance of the fact that 5 years have not elapsed since any of those deposits. *§ 2042* does NOT say the funds belong to the Rich creditors for 5 years after deposit into registry. *11 U.S.C. § 2042*. It does say that (1) IF a person has had his right to registry funds established via adjudication—or if the person's right to those registry funds is undisputed, and (2) the funds have been on deposit in registry for at least 5 years without being claimed by such person, THEN the court is to cause such money to be deposited in the Treasury in the name and to the credit of the United States. *Id.* Upon that payment into Treasury, THOSE FUNDS DO NOT ESCHEAT TO THE UNITED STATES. *Id.* Rather, the funds are held there indefinitely. *In re IBIS*, 272 B.R. at 896. Indeed, the last sentence of *§ 2042* allows anyone to claim the unclaimed funds from either the court's registry or from Treasury by obtaining a court order after the giving the prescribed notice and proving entitlement to the funds. *11 U.S.C. § 2042*. The interplay between the two statutes is that *§ 1143* can prohibit a creditor from ever being able to prove, in a *§ 2042* claim, the creditor's entitlement to registry funds.

As stated above, the 5-years mentioned in *§ 2042* has nothing to do with the 5 years mentioned in *§ 1143*. *§ 2042* merely requires the registry funds to be moved after they have been held by the Court for 5 years awaiting claim by someone whose right thereto has been established via adjudication (or as a result of there being no dispute as to the person's entitlement). If such has never occurred, the funds are to remain in registry—but if, after 5 years of such status without the funds being claimed by the person previously adjudicated to be their owner (or if the ownership is undisputed), they are to be moved to Treasury. The funds can be claimed/withdrawn while they are either in registry or Treasury. Since 1956, no escheat of registry funds to either a state or the federal government is permitted. *In re IBIS*, 272 B.R. at 896. In the two cases at bar, there has been no adjudication of ownership of any registry funds (and no one is the undisputed owner of them), so *§ 2042* requires the funds stay in this Court's registry (not to be moved to Treasury until 5 years after such an adjudication without the adjudicated owner claiming them via the *§ 2042* protocol).

**Ability of Creditors to Advance Claims in State Court During Winding Up**

During the September 8 hearing herein, the Court questioned counsel for Movants as to whether the creditors could make claim in the Nevada and Florida liquidations if this court were to distribute the sought registry funds to the debtors. A close reading of the *In re TLI* court's opinion would answer: "Yes, they can." 213 B.R. at 951. That court stated once the funds left the liquidating fund, *those funds were no longer subject to the limitations expressed in the Plan. Id.* [*emphasis* added].

That is patently understandable—for if the bar in the plan against the DEBTOR receiving the funds is ineffective by operation of law (*e.g.*, *§ 347(b)*), once the funds go to registry, **then**

**the plan's bar against CREDITORS having any right to claim those funds is also ineffective.** Stated another way, if plan restrictions applicable while the case is open no longer apply to the debtor once funds go into registry once the case is closed, plan restrictions would no longer bar creditors when they seek to recover the funds paid from registry to the debtors in the winding up proceedings required of those corporations under the laws of their states of organization. If the plan restrictions no longer apply, they no longer apply to debtor or creditor alike.

***So, ironically, the case creditors get a chance to recover the unpaid portion of their allowed claims in state court—even though they are barred from such under applicable bankruptcy law.*** To the extent the creditors are there successful, the fear of the Office of U.S. Trustee that funds paid to the corporate debtor would inure to the benefit of the last officers and shareholders of those corporations would seem to be misplaced. Instead, paying these *§ 2042* claims to the debtors is the only hope creditors have of benefitting from these registry funds.

**Impact of Florida Trust Law**

At the September 8 hearing herein, there was barely a mention of the role *McLemore v. McLemore*, 675 So. 2d 202, 205 (Fla. Dist. Ct. App. 1996) plays in these cases. No one questioned either its relevancy or the outcome of applying its holding (other than noting that some of the unclaimed funds might be traceable to properties contributed to the liquidating trust from sources other than A.G.A. Flowers, Inc.—which seems a tacit admission that resulting trusts in favor of these debtors arose upon termination of the liquidating trusts). Again, each of the Flowers and Rich plans utilized a liquidating trust that expired by its own terms.

Florida law provides that upon expiration, these trusts—and the powers of their trustees—terminated. *McLemore*, 675 So. 2d at 205. Florida law also provides that since neither trust definitively provides for ultimate distribution of unclaimed registry funds, a resulting trust arises over the remaining trust assets in favor of the debtor as the grantor of the trust. *Id.* As the final beneficiaries of these trusts prior to distribution of the assets held at termination, the debtors are the rightful owners of these funds (some, perhaps, in the case of Flowers, but all in the case of Rich) which the trustees paid into registry. Thus, even if *In re TLI* (213 B.R. at 951) is not followed here, Florida statutes and common law appellate decisions supply Movants with alternative--but equally compelling--proof to support their *§ 2042* claims.

**Summary of Argument**

Here, two clear paths of legal analysis exist—both leading to the same result. The fact that neither plan addresses the disposition of unclaimed funds once paid into registry, coupled with a claim to them advanced by the **debtors** under *§ 2042* invokes the *In re TLI* decision that applies *§ 347(b)* to require the Court to deliver the registry funds to the Movants (since all case creditors are time barred by *§ 1143* as applied under the holding of *In re IBIS* (272 B.R. at 887)). 213 B.R. at 951. Or, the outcome here can be rooted in the particular facts of what the plans (and their liquidating trust agreements) do and do not say, and how those facts trigger operation of Florida trust law to establish the debtors as the last true and lawful owners of these funds prior to their payment into registry—and ultimately the parties entitled to receive them via *§ 2042*.

It is important to remember, Movants are NOT claiming these funds for any officer, director, shareholder, or creditor of any officer, director or shareholder. The holdings in the cases cited by the U.S. Trustee's Office turned on facts not present here. If the claimants here

were officers, shareholders, creditors, or judgment creditors of officers or shareholders, then those cases have relevance—but here, the claimants are none of those. Here, the claimants are direct assignees of the debtors themselves—and that is a distinction that leads directly to a different outcome than in the cases relied on by the U.S. Trustee. Those were cases seeking to expand the reach of *§ 347(b)* beyond claims put forth by debtors. Here, Movants are arguing for no such extension of the statute's reach.

Movants' Reply Brief addresses the issues previously designated by this court and unequivocally demonstrates that each of these corporate debtors: (A) continues as a corporate entity capable of pursuing these funds; (B) still has officers and directors with authority to execute the General Assignment; (C) is not prevented by its plan from claiming these funds; and (D) is bound by the law of its organizing state as to how it is to dispose of the net funds. Finally, Movants' Reply Brief cites long-standing bankruptcy jurisprudence that prohibits either the Rich or Flowers case from being re-opened for the purpose of modifying a plan that has been completely consummated. There is no proffer that these plans are less than substantially consummated.

Others have argued here that the holding of *In re Future Trust*, (387 B.R. 574 (B.A.P. 8th Cir. 2008)), dictates that the funds remaining in a liquidating trust upon termination are controlled by the confirmed plan. The 8th Circuit B.A.P. says for that statement to be accurate, the confirmed plan must address the issue. *Id.* at 579. As shown, NEITHER plan provides for disposition ONCE THE FUNDS GO INTO REGISTRY. Thus, the holding of *In re TLI*, teaches that once funds go into registry, those funds are no longer subject to plan provisions, but instead the Bankruptcy Code governs their disposition. 213 B.R. at 951. Thus, we come squarely back

to *In re Entire Supply*—which recognized that a corporate debtor which continues to exist **is required** to be revested with the unclaimed registry funds when making a *§ 2042* claim for them, even if that debtor does not operate post-bankruptcy. 2008 Bankr. LEXIS 345, at *12.

Again, Movants accept that they bear the burden under *§ 2042* of proving themselves entitled to the unclaimed registry funds, but it is here submitted that they have met that burden. Accordingly, it is requested the Flowers registry funds be paid to Jacob Consulting and the Rich registry funds be paid to Omega Consulting.

WHEREFORE, the Movants pray for the entry of an order granting the Movants' Motions for Release of Unclaimed Funds, and for such further relief that this Court deems just and equitable.

/S/ William M. Olah

William M. Olah, Attorney for Omega Consulting
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
333 Ohio Street
Terre Haute, IN 47807
Phone: 812-232-4311
Fax: 812-235-5107
WMOlah@wilkinsonlaw.com
Indiana Atty. No. 9738-84

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the **POST-HEARING BRIEF OF MOVANTS** was filed with the Court, and that undersigned sent a copy hereof electronically to the following:

    Joel M. Aresty  aresty@mac.com

    Scott L. Baena  sbaena@bilzin.com

        eservice@bilsin.com; lflores@bilzin.com; abeck@bilzin.com

    Paul J. Battista  pbattista@gjb-law.com; gjbecf@gjb-law.com

    Jeffrey S. Berlowitz  wcapote@phillipslawyers.com

    Russell M. Blain  rblain.ecf@srbp.com

    Bruce E. Bloch  general@sblawfirmfl.com

    Mark D. Bloom  bloom@gtlaw.com

        phillipsj@gtlaw.com; MiaLitDock@gtlaw.com; miaccfbky@gtlaw.com

    Cynthia I. Chiefa  ciclaw@verizon.net

    Carlos L. De Zayas  cdz@lydeckerlaw.com, js@lydeckerdiaz.com,

        gh@lydeckerdiaz.com

    Randy R. Dow  rdow@pm-law.com; mweiner@pm-law.com

    John D. Eaton  jeaton@bergersingerman.com

    C. Craig Eller  celler@broadandcassel.com

    Robert G. Fracasso Jr.  rfracasso@shutts.com

    Charles D. Franken  frankencdf@aol.com

    Michael I. Goldberg  Michael.goldberg@akerman.com; Charlene.cerda@akerman.com

    Gregory S. Grossman  ggrossman@astidavis.com


    David B. Haber  dhaber@dhaberlaw.com, ngomez@dhaberlaw.com;

dpodein@dhaberlaw.com, enewell@dhaberlaw.com

Brian T. Hanlon  tc_legal_services@co.palm-beach.fl.us

Kenneth M. Jones  kjones@moodyjones.com

Soneet R. Kapila  msams@kapilaco.com

Joel S. Knee  kneej@dor.stat.fl.us

Dennis J. LeVine  courtinfo@bcylaw.com

David Hywel Leonard  hleonard@carltonfields.com,

lrodriguez@carltonfields.com; tpaecf@cfdom.net

David B. Marks  brett.marks@akerman.com, Charlene.cerda@akerman.com

Robert C. Meyer  meyerrobertc@cs.com, taniaslaw@yahoo.com

Todd C. Meyers  tmeyers@kilpatrickstockton.com

Miami-Dade County Tax Collector  mdtcbkc@miamidade.gov

John A. Moffa  trusteeattorney@gmail.com, TrusteeAttorney@aol.com,

TrusteeattorneyA@aol.com; MBBankruptcy@earthlink.net

Glenn D. Moses  gmoses@gjb-law.com, gjbecf@gjb-law.com

Ronald G. Neiwirth  rgn@fowler-white.com, mlf@fowler-white.com

Timothy J. Norris  tjnorris@duanemorris.com

Craig V. Rasile  crasile@hunton.com; mtucker@hunton.com,

mmannering@hunton.com; keckhardt@hunton.com,
adeboer@hunton.com

Brian G. Rich  brich@bergersingerman.com, efile@bergersingerman.com

David L. Rosendorf  dlr@kttlaw.com, rcp@kttlaw.com; CWT@kttlaw.com,

ycc@kttlaw.com

Alex P. Rosenthal  alex@rrcounsel.com

Peter D. Russin  prussin@melandrussin.com,

ltannenbaum@melandrussin.com; mrbnefs@yahoo.com

Martin L. Sandler  martin@sandler-sandler.com

Reggie David Sanger  ecfmail@reggiedsangerpa.com, rdsoffice@gmail.com

Lee H. Schillinger  fraudbuster@bellsouth.net

Susan R. Sherrill-Beard  Sherrill-beards@sec.gov, atlreorg@sec.gov

Jason Slatkin  jslatkin@slatkinreynolds.com, imalcol@slatkinreynolds.com

Steven J. Solomon  jserrano@adorno.com

Melinda S. Thornton  cao.bkc@miamidade.gov

Kenneth A. Welt  court@trusteeservices.biz, fl10@ecfcbis.com;
    pacerfilings@gmail.com

Frank M. Wolff  fwolff@whmh.com, psmith@whmh.com,
    rtg@whmh.com; tkm@whmh.com; smp@whmh.com

Stuart A. Young  syoung81@bellsouth.net

Douglas C. Zahm  dcz@dczahm.com

Jonathan H. Alden  jonathan.alden@dep.state.fl.us;
    syndie.l.kinsey@dep.state.fl.us

Grisel Alonso  grisel.alonso@usdoj.gov; daleana.roque@usdoj.gov

Becket and Lee LLP  notices@becket-lee.com

Michael S. Budwick  mbudwick@melandrussin.com;
    ltannenbaum@melandrussin.com; mrbnefs@yahoo.com

David C. Cino  dcimo@gjb-law.com; gjbecf@gjb-law.com

Drew M. Dillworth  ddillworth@stearnsweaver.com;
    marocha@stearnsweaver.com; rross@stearnsweaver.com;
    mmesonesmori@stearnsweaver.com

Debi Evans Galler  dgaller@bergersingerman.com
    jalvarez@bergersingerman.com, efile@bergersingerman.com

John H. Genovese  jgenovese@gjb-law.com; cgreco@gjb-law.com;
    dsanchez@gjb-law.com; gjbecf@gjb-law.com

Andrea Horowitz Handel  andrea.handel@usdoj.gov

Heather L. Harmon  HHarmon@gjb-law.com; gjbecf@gjb-law.com

Bart Alan Houston  bhouston@gjb-law.com

Roy S. Kobert  orlandobankruptcy@broadandcassel.com

John W. Kozyak  jk@kttlaw.com; ycc@kttlaw.com; la@kttlaw.com

Paul J. McMahon  pjm@pjmlawmiami.com

James B. Miller  bkcmiami@gmail.com

Barbara L. Phillips  bphillipspa@bellsouth.net; bplegal@bellsouth.net

Jeffrey M. Poppel  jpoppel@um-jmh.org

David C. Profilet  dprofilet@the-beach.net

Andrew V. Tramont Jr.  avt@rtgn-law.com; pan@rtgn-law.com; jr@rtgn-law.com

David Weitman  david.weitman@klgates.com

Juan C. Zorrilla  jcz@zgolaw.com

DONE this 15th day of September, 2010.

I hereby certify that the undersigned attorney is appearing *pro hac vice* in this matter pursuant to court order dated May 26, 2010.

/S/  William M. Olah
William M. Olah, Attorney for Omega Consulting*

*Marsad Quraishi (Florida Bar No. 023790; Bice Cole Law Firm, P.L., 999 Ponce De Leon Blvd., Suite 710, Coral Gables, FL 33134; Ph. 305-444-1225; Fax 305-446-1598) assisted me with my Admission *Pro Hac Vice*.